UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

A.E. a minor child, by her
parents and legal guardians
Kimberly Ann Eckman and
Stuart Eckman,

        Plaintiffs,

vs.

North Country Health
Services, doing business
as North Country Regional
Hospital, MeritCare Medical
Group, a foreign corporation,
also known as Meritcare
Health System, also known
as MeritCare Clinic Bemidji,
Diane M. Pittman, M.D., and
Mark E. Colliton, M.D.,

        Defendants.        Civ. No. 09-1766 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion to Remand, the Defendant Dr. Diane M. Pittman's Motion to Substitute and Dismiss, and the Movant United States' Motion to Dismiss. At the time of the Hearing, the Plaintiffs appeared by Steven D. Emmings, Esq., the Defendant North Country Health Services appeared by LouAnn Lawton, Esq., the Defendants MeritCare Medical Group, and Dr. Mark E. Colliton, appeared by Michael T. Andrews, Esq., and the Defendant Dr. Diane M. Pittman, appeared by Ana H. Voss, Assistant United States Attorney, as did the Movant, the United States of America ("United States"). For reasons which follow, we recommend that the Plaintiff's Motion to Remand be denied, that Dr. Pittman's Motion to Substitute the United States, and to Dismiss Dr. Pittman be granted, and that the claims against the United States be dismissed with prejudice.

## II. Factual and Procedural Background

This action arises out of a lawsuit for medical malpractice, which was filed by the Plaintiffs against the Defendants, including Dr. Pittman, who was a family physician employed by the Indian Health Services at all relevant times. The Plaintiffs filed their Complaint, see Docket No. 1-1, in the Minnesota District Court for the County of Beltrami, in which they allege that, on June 22, and 23, 1998, Drs. Pittman and Colliton were negligent in their management of the labor of the Plaintiff Kimberly

Eckman, and the delivery of her infant daughter, A.E., at North Country Health Services, d/b/a North Country Regional Hospital ("North Country Hospital"). See, Docket No. 1-1, at ¶27. According to the Complaint, Dr. Pittman acted individually, or as a servant, and/or employee, and/or actual or apparent agent, of North Country and/or the Defendant MeritCare Medical Group ("MeritCare"). See, Docket No.1-1, at ¶27. The Plaintiffs contend that the Defendants' negligence resulted in a number of injuries to A.E., including cerebral palsy, with developmental delays. See, Docket No. 1-1, at ¶30, Sections (a)-(k).

On July 9, 2009, Dr. Pittman removed the action to Federal Court, see, Docket No. 1, and subsequently filed a Motion to Substitute and Dismiss, see, Docket No. 23, in which she asserts that the United States of America (the "Government") should be substituted for her as the proper Defendant, and that the claims against her should be dismissed with prejudice. Id. at p. 2. Thereafter, the Government filed a Motion to Dismiss the claims against it, for lack of jurisdiction, under Rule 12(b)(1), Federal Rules of Civil Procedure, if the Government is substituted for Dr. Pittman. See, Docket No. 30.

In turn, the Plaintiffs have filed a Motion to Remand to State Court and, in support thereof, argue that this Court lacks jurisdiction because the Plaintiffs raised

no claims under the Federal Tort Claims Act, <u>Title 28 U.S.C. §§2671, et seq.</u> ("FTCA"), or against the Indian Health Services Agency ("IHS"). See, <u>Docket No. 12</u> at p. 3. Further, the Plaintiffs contend that the case should be remanded to State Court for more discovery on the issue of Dr. Pittman's employment, and agency status, at the relevant times or, alternatively, that this Court should reserve a ruling on the matter, and allow discovery to proceed in the State or Federal Court so as to resolve the scope of employment issue. <u>Id.</u> at p. 4.

The United States Attorney for the District of Minnesota has certified that, at the time of the alleged negligence, Dr. Pittman was acting within the scope of her employment as an employee of the Government. See, <u>Certification</u>, <u>Docket No. 3</u>. In addition, Dr. Pittman submitted a Declaration attesting that she was employed by the IHS, from July 8, 1985, until April 18, 2008, as a family physician at the Cass Lake Service Unit and Hospital ("Cass Lake Hospital"), in Cass Lake, Minnesota, and also held medical staff privileges at North Country Hospital, in Bemidji, Minnesota. See, <u>Docket No. 26 ("Pittman Decl.")</u> at ¶1. Dr. Pittman also avers that the care that she provided to A.E., and A.E.'s mother, on June 22, and 23, 1998, was performed in her capacity as an IHS physician, and that she was not working for any other entity at the time. <u>Id.</u> at ¶2, ¶3.

In addition, James C. Anagnos ("Anagnos"), who is an Attorney in the Office of the General Counsel for the Department of Health and Human Services ("DOH"), which maintains a computerized database with respect to administrative tort claims, which have been filed with respect to the IHS, has submitted a Declaration. See, Docket No. 25 ("Anagnos Decl."). In his Declaration, Anagnos avers that official agency records document that Dr. Pittman was an employee of the Cass Lake Hospital, which is operated by the IHS, at all times relevant to the Complaint. Id. at ¶4. Anagnos also attests that there is no record of an administrative tort claim, that has been filed by any of the Plaintiffs, and that relates to medical care provided to A.E., or A.E.'s mother, on June 22, and 23, 1998, by the Cass Lake Hospital, or by Dr. Pittman. Id. at ¶5.

To date, Dr. Pittman has not responded to any of the Plaintiffs' discovery requests. See, Memorandum in Opposition to Defendant Pittman's Motion ("A.E. Memo in Opp."), Docket No. 43 at pp. 4-5. Dr. Pittman, however, filed a Reply Brief on October 23, 2009, see Docket No. 50, to which she attached the Declaration of Dr. Kathleen R. Annette, see, Docket No. 51 ("Annette Decl."). Dr. Annette attests that she has been the Director of the IHS, Bemidji Area, since 1990. Id. at ¶1. According to Dr. Annette, the Cass Lake Hospital is a thirteen (13) bed facility, with both

outpatient and limited inpatient medical services. Id. at ¶2. Dr. Annette further avers that, in June of 1998, the IHS employed Dr. Pittman, as a family physician at the Cass Lake Hospital, and that the IHS required Dr. Pittman, and all of the other physicians at the Cass Lake Hospital, who provided Obstetrical/Pre-natal care, to maintain staff privileges at the North Country Hospital for deliveries. Id. at ¶3. As sworn to by Dr. Annette, all of the Cass Lake Hospital's obstetric patients had their babies delivered at the North Country Hospital, because the Cass Lake Hospital had no delivery room. Id. at ¶4.

### III.  Discussion

A.    The Plaintiffs' Motion to Remand to State Court.

The Plaintiffs seek the remand of this case to the Minnesota District Court from which it was removed, because the Plaintiffs did not assert any claims under the FTCA, or against the IHS.  In response, Dr. Pittman and the Government argue that the United States Attorney's Certification is conclusive on the issue of Removal, and that the Supreme Court's decision in Osborn v. Haley, 549 U.S. 225, 241-42 (2007), prohibits this Court from remanding this action to State Court, even if the Court concluded that the United States Attorney issued the Certification in error, and thereafter, denied the Motion to Substitute.

1.    <u>Standard of Review</u>.  Title 28 U.S.C. §2679(d) authorizes the Attorney General, or his or her designee, to certify that a Federal employee, who is sued for allegedly committing a tort, "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," thereby precluding any further action against that employee for money damages.  See, <u>Title 28 U.S.C. §2679(d), and (b)(1)</u>; <u>Osborn v. Haley</u>, supra at 229-230.

Section 2679(d)(2) provides as follows:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. **This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal**.

<u>Title 28 U.S.C. §2679(d)(2)</u> [emphasis added]; <u>Osborn v. Haley</u>, supra at 233-34.  As we have noted, the Attorney General has delegated the authority to certify the

employment status of Federal employees to the local United States Attorneys. See, Title 28 C.F.R. §15.4.

The Supreme Court has held that, once the Attorney General, or his or her delegate, certifies that a Federal employee is acting within the scope of his or her employment, "exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court," even if the certification by the Attorney General was made in error. See, Osborn v. Haley, supra at 231; see also, Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 433 n. 10 (1995); Alexander v. Mount Sinai Hosp. Medical Center, 484 F.3d 889, 896 (7th Cir. 2007), citing Osborn v. Haley, supra.

    2. Legal Analysis. As we have detailed, the United States Attorney for the District of Minnesota has certified that he read the Complaint in this action, and that, based upon the information available to him, Dr. Pittman "was acting within the scope of her employment as an employee of the United States at the time of the conduct alleged in the complaint." Thereafter, on July 9, 2009, Dr. Pittman filed her Notice of Removal of Action to this Court, and therefore, all of the requirements of Section 2679(d)(2) having been satisfied, this Court, under the holding in Osborn v.

Haley, does not have the authority, under the plain language of the statute, to remand this action to State Court from which it was removed.

At the Hearing, however, the Plaintiffs urged that a remand was appropriate because they believe that the case will ultimately be decided in the State Courts. Notwithstanding that urging, the Plaintiffs' contention is foreclosed by the clear and unmistakable language of Section 2679(d)(2), as construed by the Supreme Court's decision in Osborn v. Haley. As a consequence, the law is clear that this Federal Court has exclusive jurisdiction over the action following the United States Attorney's Certification, and the action may not be remanded to State Court, even if we were to deny Dr. Pittman's Motion to Substitute, and the Plaintiffs' request for a remand in order to conduct discovery in the State Court, so as to determine whether the Certification was issued in error, is wholly without merit.

Simply put, neither the State nor this Court has the authority to determine whether the removal of this case was appropriate, as Congress has already made that determination conclusively. See, e.g., Loza v. Native American Air Ambulance, 2009 WL 2870083 at * 2 (D. Ariz., September 3, 2009)(Section 2679(d)(2) requires removal, even where the Federal Court lacks subject matter jurisdiction over the action because of the plaintiff's failure to meet a jurisdictional prerequisite to suit).

Accordingly, we are compelled, as a matter of law, to deny the Plaintiffs' Motion to Remand on jurisdictional grounds.

      B.    <u>Dr. Pittman's Motion to Substitute the Government as the Defendant</u>.

"[Dr. Pittman] [is] an employee of the United States of America," see <u>Notice of Removal</u>, <u>Docket No. 1</u>, at p. 1, and the United States Attorney, for the District of Minnesota, has certified that she "was acting within the scope of her employment as an employee of the United States at the time of the conduct alleged in the complaint." See, <u>Docket No. 3</u>. Since the Plaintiffs' allege negligent acts against Dr. Pittman, we review her Motion to Substitute, and the Government's Motion to Dismiss, under the standards applicable to actions under the FTCA.

      1.    <u>Standard of Review</u>. The FTCA is a limited waiver of sovereign immunity that authorizes private tort actions against the United States, "under circumstances where the United States, if a private person, would be liable to the complainant in accordance with the law of the place where the act or omission occurred." See, <u>United States v. Olson</u>, 546 U.S. 43, 44 (2005), citing <u>Title 28 U.S.C. §1346(b)(1)</u>; see also, <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 700 (2004)("The FTCA 'was designed primarily to remove the sovereign immunity of the United States

from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circum-stances.'"), quoting Richards v. United States, 369 U.S. 1, 6 (1962), and Title 28 U.S.C. §2674; see also, Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006); Benter v. United States, 2006 WL 3759756 at *1 (D. Minn., December 21, 2006), aff'd sub nom., 221 Fed.Appx. 471 (8th Cir., April 9, 2007).

As noted, under the FTCA, the Federal Government may be sued for the negligent or wrongful acts of "any employee of the government while acting within the scope of his office or employment" under circumstances in which the United States would be liable were it a private employer. See, Title 28 U.S.C. §§1346(b)(1), and 2674; St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001); see also, Primeaux v. United States, 181 F.3d 876, 878 (8th Cir. 1999), cert. denied, 528 U.S. 1154 (2000); Anthony v. Runyon, 76 F.3d 210, 212-13 (8th Cir. 1996).

Title 28 U.S.C. §2679(d)(2) provides that, if an action is commenced in State Court against an individual employee of a Federal agency, rather than against the United States, the Attorney General is charged with making the initial determination of whether that employee was acting within the scope of his or her employment. See, Heuton v. Anderson, 75 F.3d 357, 359-60 (8th Cir. 1996). The action is then removed

to Federal Court, and the Government may be substituted for the named defendant, based upon the scope of employment certification by the Attorney General. See, Osborne v. Haley, supra at 241; Smith v. Wintersteen, 97 Fed.Appx. 69, 69 (8th Cir., May 21, 2004); Larsen v. Frederiksen, 277 F.3d 1040, 1041 (8th Cir. 2002); Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996).

The certification by the Attorney General, however, "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee," see, McAdams v. Reno, 64 F.3d 1137, 1145 (8th Cir. 1995), as our Court of Appeals requires "at least limited judicial review of the * * * scope of employment before substituting the United States as a defendant." See, Forrest City Mach. Works, Inc. v. United States, 953 F.2d 1086, 1088 (8th Cir. 1992)[citation omitted]; see also, Brown v. Armstrong, 949 F.2d 1007, 1011 (8th Cir. 1991). As a result, certification is prima facie evidence that the challenged conduct was within the scope of employment, and a plaintiff must come forward with specific facts to rebut the Certification, and to establish that the employee was not acting within the scope of her Federal employment. See, McAdams v. Reno, supra at 1145; Anthony v. Runyon, supra at 215; Heuton v. Anderson, supra at 361; Lawson v. United States, supra at 60; Jamison v. Ramsey, 2009 WL 129897 at *2 (W.D. Ark. January 20, 2009).

The determination that a Federal employee acted "within the scope of his office or employment," under Section 2679, is governed by the applicable State law of respondeat superior. See, St. John v. United States, supra at 676; Primeaux v. United States, supra at 878; Walsh v. United States, 31 F.3d 696, 699 (8th Cir. 1994); Forrest City Mach. Works, Inc. v. United States, supra at 1088, n. 5. Under Minnesota law, in cases asserting tortious negligence, the "[f]actors to consider in determining whether the negligent acts occurred in the scope of employment, include whether '(1) the conduct was to some degree in the furtherance of the employer's interests, (2) the employee was authorized to perform the type of conduct, (3) the conduct occurred substantially within time and space restrictions, and (4) the employer should reasonably have foreseen the conduct.'" Snilsberg v. Lake Washington Club, 614 N.W.2d 738, 745 (Minn.App. 2000), citing Hentges v. Thomford, 569 N.W.2d 424, 427 (Minn.App. 1997); see also, Red Lake Band of Chippewa Indians v. United States, 800 F.2d 1187, 1197 n. 4 (D.C. Cir. 1986), citing, Edgewater Motels, Inc. v. Gatzke, 277 N.W.2d 11, 15 (Minn. 1979); Grozdanich v. Leisure Hills Health Center, Inc., 25 F. Supp.2d 953, 983 (D. Minn. 1998), reconsideration denied, 48 F.Supp.2d 885 (D. Minn. 1999).

2.    <u>Legal Analysis</u>.  Dr. Pittman has submitted the Certification, as a prima facie showing of her status as a Federal employee, during all times relevant to the Plaintiffs' Complaint, and, in order to avoid the resultant substitution of the Government for Dr. Pittman, the Plaintiffs' have the burden of raising specific facts to rebut the Certification, and to prove that Dr. Pittman was not acting in the scope of her Federal employment.  See, <u>Brown v. Armstrong</u>, supra at 1012.

In attempting to carry that burden, the Plaintiffs argue that the Certification may have been in error, since in its Answers to Interrogatories, the North Country Hospital averred that Pittman was a "member[] of the medical staff of North Country Health Services," but was not an agent, employee, or servant of that Hospital.  See, <u>Docket 43-2</u>, at p. 3.  In addition, the Plaintiffs note that A.E. was delivered at the North County Hospital, and not at an IHS facility.  Accordingly, the Plaintiffs assert that, in light of those specific facts, Dr. Pittman has not proffered sufficient facts to show that her actions at the North Country Hospital were properly within the scope of her Federal employment.[1]  See, <u>A.E. Memo in Opp.</u>, supra at p. 3.

---

[1]The Plaintiffs appear to misapprehend the burdens of production and persuasion, that are involved in a scope of employment dispute in which the United States Attorney has issued a Certification.  The Plaintiffs maintain that Dr. Pittman has put forth an "incomplete analysis" of the issue, and that she has submitted "[n]o proof * * * to show [that she] delivered [A.E.] while on the Indian Health Service's clock."

Contrary to the Plaintiffs' argument, the Record contains ample evidence to overcome the Plaintiffs' concerns, and to cogently demonstrate that Pittman was acting within the scope of her Federal employment, based upon the factors addressed in Snilsberg.  In their Memorandum in Opposition, the Plaintiffs assert that IHS and the North Country Hospital are "separate and distinct" entities, and that Dr. Pittman's actions, at the North Country Hospital, furthered the interests of that Hospital, and not the IHS.  See, A.E. Memo in Opp., supra at p. 9.  However, in North Country Hospital's Answer to the Complaint, see Docket No. 21, as well as its Responses to the Plaintiffs' Requests for Admission, see Docket No. 27-1, the Hospital specifically denies that Dr. Pittman was its agent, servant, or employee.  Id. at 6.

Similarly, MeritCare's responses to the Plaintiff's Requests for Admission, see, Docket No. 27-2, categorically deny that Dr. Pittman was MeritCare's agent, servant, or employee.  Id.  In her Declaration, Dr. Annette also attests that Dr. Pittman was required to maintain staff privileges at the North Country Hospital, and that all of the

---

See, A.E. Memo in Opp., supra at p. 9.  However, Dr. Pittman has presented a prima facie showing, and thereafter, it is not her burden to conclusively prove, with additional facts, that she was working within the scope of her Federal employment, absent a rebuttal showing from the Plaintiffs.  Nonetheless, Dr. Pittman has submitted a substantial factual basis to support the Certification, which we examine for purposes of the Motions before us.

Cass Lake Hospital's obstetric patients had their deliveries at the North Country Hospital. Therefore, the fact that the delivery of A.E. occurred at North Country Hospital raises no inference, let alone a showing, that Dr. Pittman's actions were in the interests of the North Country Hospital and, to the contrary, the evidence abundantly supports a finding that she was acting in the interests of IHS when she performed her medical services at the North Country Hospital.

While the Plaintiffs question whether Dr. Pittman's actions at the North Country Hospital were authorized by the IHS, see, A.E. Memo in Opp., supra at p. 9, the Record persuasively shows that the IHS had authorized the very type of medical services at issue here -- namely, obstetric medical practice -- at the North Country Hospital. See, Annette Decl., supra at ¶3, ¶4. Indeed, there is nothing of Record to suggest that, at any relevant time, Dr. Pittman's actions were authorized by anyone else than the IHS. To be sure, the Plaintiffs maintain that Dr. Pittman was not acting "substantially within the time and space restrictions" of her Federal employment, since her services at issue were performed at North Country Hospital, instead of the Cass Lake Hospital, see, A.E. Memo in Opp., supra at p. 9, but the Record conclusively shows that, even though the Cass Lake and North Country Hospitals are physically separate facilities, Dr. Pittman's medical care at the North Country Hospital

was required by her employment with the IHS, and was, therefore, substantially within the time and space restrictions of her employment.

Lastly, having required her to maintain staff privileges at the North Country Hospital, the IHS plainly foresaw that Dr. Pittman would deliver infants at that Hospital. Therefore, the <u>Snilsberg</u> factors all weigh decidedly in support of the Certification's prima facie showing, that Dr. Pittman was acting within the scope of her Federal employment, on June 22, and 23, 1998, at North Country Hospital. As a consequence, we find that the Government has convincingly demonstrated that, at all times relevant to the Plaintiffs' Complaint, and to their allegations of negligence, Dr. Pittman was working within the scope of her Federal employment.

We are mindful of the Plaintiffs' assertion that, because Dr. Pittman held medical staff privileges at the North Country Hospital, she was not acting within the scope of her Federal employment, however, we conclude that the question of medical staff privileges does not weigh appreciably in the scope of employment question. The cases addressing the issue in Minnesota demonstrate that medical staff privileges do not render a staff-privileged physician a hospital employee. See, <u>McElwain v. Van Beek</u>, 447 N.W.2d 442, 446 (Minn.App. 1989)(physician not hospital employee where he had hospital privileges at several area hospitals); <u>Larson v. Wasemiller</u>, 738

N.W.2d 300, 309 (Minn. 2007)(discussing tort of negligent credentialing for hospitals granting staff privileges to contracting physicians; where the tort is recognized, it is not based on vicarious liability); Wall v. Fairview Hospital and Healthcare Services, 1995 WL 450501 at *1 and *2 (Minn.App., August 1, 1995)(psychiatrist with staff privileges was not an employee); Brown v. Luckett, 2007 WL 2245830 at *2 (E.D. Mo., August 1, 2007) (the physician-defendant was employed by the People's Health Center, but the relevant conduct took place at St. Mary's Hospital; defendant's affidavit and W-2 showed that he was solely a Federal employee); Lilly v. Fieldstone, 876 F.2d 857, 860 (10th Cir. 1989)(medical staff privileges did not make contract surgeon an employee of an Army hospital).

Accordingly, Dr. Pittman's medical staff privileges at North Country Hospital do not raise a reasonable inference that she acted as an employee of that Hospital, that she was an independent contractor of that Hospital, or that she was somehow acting outside the scope of her Federal employment.[2] Even if such an inference could be

---

[2]The Plaintiffs cite to Woodruff v. Covington, M.D., 389 F.3d 1117, 1127 (10th Cir. 2004), for the proposition that a Federal employee can also be an independent contractor, but Woodruff has limited application here. There, the Court distinguished between a government employee, and a government contractor, when the Attorney General had not certified him as a federal employee. The Tenth Circuit listed seven factors to consider in its analysis, id. at 1126, but here, Minnesota's law of respondeat

(continued...)

argued to arise, it is soundly rebutted by Dr. Annette's Declaration, in which she avers that Dr. Pittman's medical staff privileges at the North Country Hospital were a required component of her employment with the IHS.

Of course, when a plaintiff has advanced sufficient facts, a District Court may determine that certain conduct was outside the scope of employment, and refuse to substitute the Government, even when a Certification has been presented. See, <u>Mathis v. Henderson</u>, 243 F.3d 446, 449-50 (8th Cir. 2001)(discussing application of Title VII to actions "de-certified" by the District Court as outside the scope of Federal employment). However, where, as here, the plaintiff fails to proffer any competent

_____

[2](...continued)
superior controls our assessment of the scope of employment question, and not the Tenth Circuit's "control" test.

The Plaintiffs also refer to <u>Wooten v. Hudson</u>, 71F.Supp.2d 1149, 1152 (E.D. Okla. 1999), as reflecting a physician-defendant who was determined to be a government employee during the day, and a contract employee at night. We find that decision also to be inapposite for several reasons. There, the United States Attorney had refused to certify the defendant, which is not the circumstance here. Since the defendant was petitioning the Court for certification, without the support of the United States Attorney, the burden was on him to demonstrate that he acted within the scope of his Federal employment which, again, is not the case here. The evidence of Record there disclosed that the physician-defendant was employed separately in the evening hours, by a contract-services agency, which is not Dr. Pittman's circumstance. While the Plaintiffs' argument, that it is possible for a Federal employee to be employed by more than one entity, is generally true, there are no facts to support any showing that Dr. Pittman was employed by an entity, other than the IHS, during the relevant times.

evidence to rebut the Certification, the plaintiff has failed in his burden to defeat the substitution of the United States. See, <u>Anthony v. Runyon</u>, supra at 215 (the plaintiffs relied only on the Complaint); <u>Phinney v. Crowder</u>, 2009 WL 1616006 at *4 (E.D. Ark., June 8, 2009)(the plaintiff did not put forth specific facts, instead arguing that the allegations of the Complaint were true and that immunity should not apply to defamation claims); see also, <u>Deering v. Bauer</u>, 2007 WL 2023556 at *3 (D. Minn., July 10, 2007); <u>Brown v. Armstrong</u>, supra at 1012; <u>Meagher v. Heggemeier</u>, 513 F. Supp.2d 1083, 1090-91 (D. Minn. 2007).

Here, the Plaintiffs have offered no factual showing to refute the United States Attorney's Certification, but simply offer conclusory argument unsubstantiated by any cogent proof. Speculation and conjecture are not enough. See, <u>Chada v. United States</u>, 2004 WL 2550302 at *2 (D. Neb. Nov. 10, 2004) ("[the plaintiff's] allegations and conclusions are not enough to carry his burden of proof"). Accordingly, we find no substantive undermining of the Certification in this instance, and we conclude that the Government should properly be substituted for Dr. Pittman.[3]

_____

[3]In a similar case, the District Court for the Eastern District of Missouri upheld a Certification of a physician-defendant as a Federal employee, who was acting within the scope of his employment. See, <u>Brown v. Luckett</u>, 2007 WL 2245830 at *2-*3 (E.D. Mo., August 1, 2007). There, the plaintiff had been a patient of the physician-
(continued...)

Lastly, we are mindful of the Plaintiffs' request to be allowed discovery on the scope of Dr. Pittman's employment. In response, Dr. Pittman opposes wide ranging discovery and urges that, if discovery be allowed, it should be strictly constrained to her scope of employment. However, Dr. Pittman's first line of argument is that the evidence before the Court is sufficient to demonstrate that further discovery would be futile, and therefore, wasteful. In order to obtain discovery on a scope of employment issue, the plaintiff must put forth facts which, if proven, would rebut the Certification. See, <u>Brown v. Armstrong</u>, supra at 1012; <u>Stokes v. Cross</u>, 327 F.3d 1210, 1216 (D.C. Cir. 2003); <u>Borneman v. United States</u>, 213 F.3d 819, 827 (4th Cir. 2000), cert. denied 531 U.S. 1070 (2001); <u>Deering v. Bauer</u>, supra at *3, citing <u>Davric Main Corp. v. United States Postal Service</u>, 238 F.3d 58, 68 (1st Cir. 2001)(to obtain discovery, the

---

[3](...continued)
defendant at the People's Health Center ("PHC"), which was funded by Federal grants. <u>Id.</u> at *1. The allegedly negligent conduct occurred, however, at St. Mary's Hospital, which did not receive Federal funding. <u>Id.</u> The Plaintiff alleged that the physician-defendant's conduct at St. Mary's was outside the scope of his Federal employment, because the plaintiff believed that the doctor was not working as an employee of the PHC at the time of the incident at St. Mary's. <u>Id.</u> at *2. The District Court found that assertion to be merely conclusory, and insufficient to rebut the Government's certification. <u>Id.</u> at *2-*3. As is the case here, there the physician-defendant also submitted an Affidavit which attested to the fact that he was solely an employee of the PHC, as he also submitted a W-2 form which listed only the PHC as his employer. <u>Id.</u> at *2.

plaintiff must "'indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment'"); Supinski v. United States, 2007 WL 4245009 at *1 (E.D. Mo., November 29, 2007)(rejecting the plaintiff's argument that discovery may lead to specific facts to rebut). As a consequence, an Evidentiary Hearing is only necessary where there are material facts in dispute. See, McAdams v. Reno, supra at 1145, citing Brown v. Armstrong, supra at 1012.

According to the Plaintiffs, discovery would allow them to proffer more factual support to rebut the Certification.[4] See, A.E. Memo in Opp., supra at pp. 4-5.

---

[4]As support, the Plaintiffs note that, in Dr. Pittman's Memorandum, she has cited to Davric Main Corp. v. United States Postal Service, 238 F.3d 58, 68 (1st Cir. 2001), as requiring only that a plaintiff show why the lack of discovery has prevented them from adequately opposing a Motion to Substitute. In Davric, the Court of Appeals for the First Circuit refused to allow discovery, and granted a Motion to Substitute, where the plaintiff had failed to identify discoverable facts which could undermine the certification, if proven. The Court did not base its decision on the plaintiff's failure to show why the lack of discovery prevented him from responding; however, the language that both briefs quote is not in the Davric opinion, but rather, appears in Dulaney v. Carnahan, 132 F.3d 1234, 1238-39 (8th Cir. 1997).

In Dulaney, our Court of Appeals concluded that the Record was sufficient for a Summary Judgment determination, in spite of the plaintiff's arguments that discovery had been inadequate, where the plaintiffs had filed a response to the Summary Judgment Motion with evidentiary support, and did not state why the lack of discovery made them unable to adequately respond to the evidence of Record. Id. (continued...)

Specifically, A.E. asks to depose Pittman, to view her employment contracts, and to receive responses to previously-served Requests for Production and Interrogatories, in order to ascertain who controlled Dr. Pittman's acts at the relevant time, whether she was "on the clock" for the IHS, who billed her services, and what policies or other information are available to show that Pittman was under the control of the IHS at the

---

[4](...continued)

We are not unsympathetic to the Plaintiffs' concern, that they should have all their questions about the scope of employment answered, because the Motion to Substitute, in this case, effectively acts as a Judgment on their claims against Dr. Pittman and the Government. However, it is often the case that a Motion to Substitute works to end a plaintiff's cause of action. See, <u>Godbout v. Parizek</u>, 2004 WL 3021393 at *4 (N.D. Ill., December 29, 2004)("[S]ubstitution is often tantamount to a judgment against the plaintiff."); <u>Jamison v. Ramsey</u>, 2009 WL 129897 at *4 (W.D. Ark., January 20, 2009); <u>Lewis v. United States</u>, 2008 WL 4838722 at *2 and *4 (D. Minn., November 5, 2008).

In creating the FTCA immunity for Federal employees, "Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether." See, <u>United States v. Smith</u>, 499 U.S. 160, 166 (1991); see also, <u>Maron v. United States</u>, 126 F.3d 317, 321-22 (4th Cir. 1997) ("[E]ven in cases where the United States has not waived its immunity, the United States must still be substituted and the individual defendant still remains immune from suit[.]"). The practical effect of the Motion to Substitute does not alter the analysis that our Circuit requires, nor does it reduce the burden on the Plaintiff to come forth with specific facts which call the Certification into question, in order to warrant discovery. Here, the simple fact is that the Plaintiffs have not demonstrated the slightest implausibility in Dr. Pittman's, and the Government's proof, and there appears to be no reasonable prospect that further discovery would undermine those showings.

relevant time.  See, Id., at p. 6.  We note, however, that the alleged negligent acts occurred some eleven (11) years ago, which would have provided the Plaintiffs with abundant time to conduct their informal discovery into many of the facts which could bear on the employment status of Dr. Pittman, and yet, they have presented nothing which so much as intimates that Dr. Pittman was employed by anyone else than the Government at the time of the alleged negligent acts.

The Plaintiffs simply have not proffered any facts which, if proven, would create a material dispute regarding the scope of employment.  While they abound in possibilities, those possibilities are founded only upon Dr. Pittman's medical staff privileges at the North Country Hospital, and we have already concluded that the evidence does not undercut the compelling showing Dr. Pittman and the Government have made. Moreover, such assertions are far from those factual contentions which have persuaded the Courts to allow Evidentiary Hearings, and discovery on the scope of employment.  See, e.g. Borneman v. United States, supra at 827-28 (the plaintiff and the individual defendant both participated in the relevant event, and had differing versions of the facts; the nature of the individual defendant's behavior was highly relevant to the scope of employment question); Stokes v. Cross, supra at 1216 (limited discovery allowed where the plaintiff's complaint alleged that the individual

defendants had "destroy[ed] critical evidence, prepar[ed] and submitt[ed] false affidavits by use of threat and coercion, and engag[ed] in criminal acts").

The Plaintiffs are personally familiar with the details of their relationship with Dr. Pittman, and they proffer nothing to suggest that she was not, as she claims, an IHS physician.  For example, the Plaintiffs have not presented a factual basis to show that Dr. Pittman was not their regular obstetrician, that A.E., and A.E.'s mother, were not receiving services from the IHS, or that they had received medical bills, for Dr. Pittman's services, from some other medical facility or medical employer.

Under the applicable law, the Plaintiffs are obligated to present specific facts that tend to rebut the Certification before the Court may grant discovery on the issue, as the immunity that Section 2679 affords to Government employees, who are acting within the scope of their employment, is not only immunity from liability, but also from suit, and all of the attendant burdens of suit, including discovery.  See, Brown v. Armstrong, supra at 1011-12 (questions of official immunity under Section 2679 must be resolved "as soon after the motion for substitution as practicable" because the purpose of the immunity is to shield Federal employees from "the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ."); Wuterick v. Murtha, 562 F.3d 375, 382 and 387 (D.C. Cir. 2009)

(reversing the District Court's denial of substitution pending discovery on validity of Certification, where the plaintiff had not shown facts to warrant discovery; absolute immunity from suit, under FTCA, includes discovery); see also, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18 (1982) (qualified immunity shields government officials from the burdens of trial and broad-reaching discovery). Here, A.E. has presented no facts indicating that the United States Attorney's Certification was made in error, and therefore, A.E. is not entitled to discovery -- even very limited discovery -- on the scope of employment issue.[5]

We recognize that Dr. Pittman did not respond to the Plaintiffs' discovery requests, and that the Plaintiffs regard the Declarations that she has proffered as "mere

---

[5]Even if the Plaintiffs had proffered sufficient, specific facts, so as to allow limited discovery on the scope of employment question, the discovery requests they submitted to the Court were far too broad to have been granted. See, <u>Maron v. United States</u>, supra at 327 (affirming district court's limitations on discovery to scope of employment); <u>Deering v. Bauer</u>, supra at *3. In addition, the questions the Plaintiffs have identified, as central to their scope of employment inquiry, have either been answered by competent evidence in the Record, or are within the Plaintiffs' control. Illustratively, Dr. Pittman's Declaration attests that she was employed solely by the IHS during the relevant time. See, <u>Docket No. 26</u>. Those attestations are independently corroborated by the Responses to the Plaintiffs' Interrogatories from the North Country Hospital, and from MeritCare, which unqualifiedly aver that Dr. Pittman is not one of their employees. While the Plaintiffs may wish to exhaust all manner of discovery to test those factual attestations, to do so on this Record would undermine the immunity that Congress specifically authorized under the FTCA without a factual or legal basis to do so.

Affidavit[s]."   See, <u>A.E. Memo in Opp.</u>, supra at p. 4.   Nevertheless, those

Declarations are competent evidence, sworn to under the penalty of perjury, which

have not been impeached, in any particular, by any evidence that the Plaintiffs have

offered.  Dr. Pittman has made more than a prima facie showing that she was working

within the scope of her Federal employment, and the Plaintiffs may dislike the result

of that showing, but they have not offered any evidence which would warrant

discovery, much less a finding that the showing was inadequate.   Therefore, we

recommend that Dr. Pittman's Motion to Substitute the United States, under Section

2679, be granted, and that Dr. Pittman be dismissed from this action.

C.	The United States' Motion to Dismiss.

The Government argues that the Plaintiffs' claims against it also be

dismissed, with prejudice, under Rule 12(b)(1), Federal Rules of Civil Procedure,

because they failed to file an administrative claim for their alleged injuries before

filing the present lawsuit, and the time to now file such a claim has expired.

1.	Standard of Review.  To bring a claim under the FTCA, a party

must fully comply with all of the conditions and requirements prescribed by the Act.

See, <u>Bellecourt v. United States</u>, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510

U.S. 1109 (1994). One of the primary requirements of the FTCA is found in the first

sentence of Title 28 U.S.C. §2675(a), which states as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

Title 28 U.S.C. §2675(a).

As the statutory language makes clear, a party cannot commence a lawsuit under the

FTCA, without first exhausting his or her administrative remedies by presenting a

written claim for relief to "the appropriate Federal agency." See, Duncan v.

Department of Labor, 313 F.3d 445, 447 (8th Cir. 2002)("Although the Federal Tort

Claims Act creates several exceptions to the United States' sovereign immunity, it

requires the claimant to first 'present[] the claim to the appropriate Federal agency.'"),

quoting Title U.S.C. §2675(a); see also, McCoy v. United States, 264 F.3d 792, 794

(8th Cir. 2001)("An action may not be commenced in federal court under the FTCA

unless the plaintiff has first presented his claim to the appropriate federal agency, and

that claim has been denied."), cert. denied, 535 U.S. 1053 (2002); <u>Jamison v. Ramsey</u>, supra at *3.

In addition, an FTCA claimant must file his or her administrative claim within two (2) years of accrual. See, <u>McCoy v. United States</u>, supra at 794 ("'[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]'"), quoting <u>Title 28 U.S.C. §2401(b)</u>; see also, <u>Garza v. United States Bureau of Prisons</u>, 284 F.3d 930, 934 (8th Cir. 2002)("Under the FTCA, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues or it is time barred."). Furthermore, "[a] plaintiff's compliance with the two-year limitations period is a jurisdictional prerequisite, since the FTCA acts as a waiver of the federal government's sovereign immunity." <u>McCoy v. United States</u>, supra at 794. Therefore, if an FTCA claimant does not file an administrative claim for relief within two (2) years after the claim accrues, any subsequent FTCA lawsuit, which is based on that claim, must be dismissed for lack of subject matter jurisdiction.

2. <u>Legal Analysis</u>. In their Memorandum, the Plaintiffs concede that any claim against the Government, or its agents, including Dr. Pittman, is time-barred. See, <u>A.E. Memo in Opp.</u>, supra at p. 10. The events alleged in their Complaint

occurred on June 22, and 23, 1998, see, <u>Docket No. 1-1</u>, supra at pp. 5, 8, and the statute of limitations for a medical malpractice claim, under the FTCA, accrues when "the plaintiff discovers the nature and cause of his injury." See, <u>Sell v. United States of America Department of Justice</u>, ---F.3d---, 2009 WL 3674103 at *1 (8th Cir. 2009), citing <u>United States v. Kubric</u>, 444 U.S. 111, 123-24 (1979). The Plaintiffs do not argue, and there is no evidence of Record to suggest, that their claim has only recently accrued.

Moreover, the Plaintiffs have never submitted any administrative claim to the DOH, which is related to the care that was provided by Dr. Pittman at the North Country Hospital on June 22, and 23, 1998, and the Plaintiffs are now time-barred from filing any such claim.[6] As the Plaintiffs candidly concede, they are time-barred

---

[6]Although A.E. does not argue the point, we independently note the FTCA statute of limitations is not tolled by A.E.'s status as a minor. In fact, our Circuit has made clear that the statute of limitations for the FTCA does not toll during a claimant's infancy, even if the claimant's parents or guardians are also infants. See, <u>T.L. v. United States</u>, 443 F.3d 956, 965 (8th Cir. 2005)(rejecting argument that FTCA statute of limitations for negligent delivery tolled when plaintiff's mother was fifteen (15) when plaintiff was born), citing <u>Wilson ex rel. Wilson v. Gunn</u>, 403 F.3d 524, 526 (8th Cir. 2005), cert. denied 546 U.S. 827 (2005); see also, <u>Sell v. United States of American Department of Justice</u>, ---F.3d---, 2009 WL 3674103 at *2-3 (8th Cir., November 6, 2009)(rejecting the plaintiff's argument that the statute of limitations was tolled due to mental illness, where the plaintiff was aware of his mental illness, the treatment that he was receiving, and was able to articulate his objections to that
(continued...)

from asserting the allegations in their Complaint against the Government, or the IHS, and since the evidence of Record demonstrates that they did not file an administrative claim with the DOH, the statute of limitations has run on the Plaintiffs' claims, as against the Government, thereby leaving them with no further administrative remedies to exhaust. Accordingly, we recommend that the claims against the Government be dismissed with prejudice.

If our Recommendation is adopted, then the Court's original jurisdiction will have been extinguished. While it is within the Court's discretion to retain the State law claims that remaining in the case, see Osborn v. Haley, supra at 244-45, the Court may, sua sponte, decline to exercise supplemental jurisdiction over those pendent claims. See, Title 28 U.S.C. §1367(c)(3); Pahl v. Olds, 2007 WL 2156333 at *5 (D. Minn. July 23, 2007)(remanding State law claims upon the dismissal of FTCA action against the United States); Gibson v. Webber, 443 F.3d 642, 647 (8th Cir. 2006); Jacobs v. Castillo, 612 F. Supp.2d 369, 375 (S.D. N.Y. 2009)(in cases where the FTCA claims against the United States have been dismissed, "remanding the non-federal actions to state courts is perfectly appropriate.").

_____

[6](...continued)
treatment).

Here, in the interests of judicial economy, fairness, convenience, and comity, and noting our Court of Appeals' preference for resolving State law questions only when necessary, see, <u>Gregoire v. Class</u>, 236 F.3d 413, 420 (8th Cir. 2000), citing <u>Condor Corp. v. City of St. Paul</u>, 912 F.2d 215, 220 (8th Cir. 1990), we recommend that the remaining State law claims, against the Defendants North Country Hospital, MeritCare, and Dr. Colliton, be remanded to the Minnesota District Court for Beltrami County, Minnesota, where the Complaint was originally filed.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiffs' Motion to Remand [Docket No. 12] be denied.

2.     That the Motion of the Defendant Diane M. Pittman, M.D., to Substitute and Dismiss [Docket No. 23] be granted.

3.     That the Motion of the Defendant United States of America to Dismiss [Docket No. 30] be granted.

4.     That, upon the dismissal of the claims against the Defendant United States of America, the remaining State law claims be remanded to the Minnesota District Court for Beltrami County, Minnesota, pursuant to Title 28 U.S.C. §1367(c)(3).

Dated: November 20, 2009          *s/Raymond L. Erickson*
                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **December 8, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **December 8, 2009**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.